UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HENRY L. HARRIS, | ) | |
| Plaintiff(s), | ) | No. C 05-1286 BZ |
| v. | ) | **FINDINGS OF FACT** |
| JOHN E. POTTER, U.S. Postmaster General, | ) | |
| Defendant(s). | ) | |

By Order dated May 11, 2006, I scheduled an evidentiary hearing be held in order to clarify whether a) Henry Harris in 2003 experienced an adverse employment action, and b) defendant had legitimate non-retaliatory reasons for denying Mr. Harris overtime work in 2003.  See Harris v. Potter, 2006 WL 1305222 (N.D. Cal.).  Due to the untimely death of Mr. Harris, the evidentiary hearing did not occur until March 26, 2007.  At the hearing, defendant was present and represented by counsel.  Victoria Monroe, having been substituted as plaintiff as successor in interest to Mr. Harris, was present and acting *pro se*.

Having considered all testimony and pertinent evidence

entered into the record, I make the following **FINDINGS OF FACT**:

1. In 2003 and 2004, at the time he complained that he was subject to retaliation, Mr. Harris was employed by defendant at his Bay Valley District as a Driver Instructor Examiner (DIE), assigned to the Training and Development Unit (Training) of the Human Resources Department.  One of his principal duties was to train people who had been hired to drive postal service vehicles.

2. In 2003 and 2004, Virginia Glover was the manager of the Human Resources Department of the Bay Valley District.  Her department had approximately 65 employees.  During this period, none of the employees in her department received overtime inasmuch as she believed that, as a support unit, there was no overtime budget for her department.

3. In 2003 and 2004, Janice Newsome was the manager of the Training Unit at the Bay Valley District and Mr. Harris worked in her unit.  During that period, she did not approve any overtime for any employee in her unit because she believed that there was no budget for overtime.

4. Although Budget and Finance Department records indicate that approximately 101 overtime hours were allotted to the Human Resources Department for fiscal year 2003, and 272 hours for 2004, Ms. Glover was not aware of these allocations.

5. During 2003 and 2004 no employee in the Training Unit was paid overtime.

6. Another part of the Bay Valley District is the

1 Transportation and Networks Division.  One of the principal
2 duties of its employees is to drive the trucks that carry mail
3 between postal service facilities.  Some of these drivers are
4 called Tractor Trailer Operators (TTOs).  Some TTOs, such as
5 Dennis Ward, have as one of their duties training or re-
6 training other TTOs.
7     7.  Those hired to drive postal service vehicles must
8 complete a multi-step training program requiring classroom and
9 hands-on vehicle instruction, and culminating in three days of
10 "carrier academy."
11    8.  The training must be coordinated so that the
12 prerequisite steps are completed prior to the three day
13 academy.
14    9.  In 2003 and 2004, when one or more full-time DIE's
15 were absent from work, or when additional trainers were needed
16 to meet the training demands, TTOs were assigned to handle DIE
17 duties (on an ad hoc basis).
18    10.  When ad hoc DIE's were utilized, they were paid
19 straight time out of the Transportation budget.  They were not
20 paid overtime.
21    11.  When on February 21, 2003, Mr. Ward was utilized as
22 an ad hoc DIE, he was not paid any overtime.
23    12. Use of ad hoc DIE's was more efficient than assigning
24 overtime to Mr. Harris.  Since Mr. Harris was working a full
25 day, and since the driver training required two to three hours
26 per person, he could not train as many people working overtime
27 as could an ad hoc DIE working a full day.  It was also more
28 economical for defendant since it provided additional trainers

1 | to the Training Unit at no additional cost to defendant, since
2 | the ad hoc DIEs were paid straight time from the
3 | transportation budget and because more employees could be
4 | trained per day.
5 |     13. The Training Unit kept no overtime desired list.
6 |     14. The Transportation Department kept overtime desired
7 | lists for each of the various craft sections, including TTOs,
8 | by tour or shifts.
9 |     15. Historically, employees such as Mr. Harris who worked
10 | as DIE's in the Training Unit were not allowed to sign onto
11 | the overtime desired lists for the TTO Section.
12 |     16. As a DIE, Mr. Harris would have been eligible for
13 | overtime hours in the various craft Sections only after the
14 | Sections' overtime desired lists were exhausted and only after
15 | the employees working in other tours within the same Section
16 | declined the assignment.
17 |     17.  The evidence presented at the hearing was that in
18 | 2003 and 2004, the TTO overtime desired list was never
19 | exhausted.  No evidence was presented to the contrary.  I
20 | therefore find that during 2003 and 2004, Mr. Harris was never
21 | denied an opportunity for overtime work in the Transportation
22 | Department for which he was eligible.
23 | Dated: March 28, 2007
24 |                                         Bernard Zimmerman
25 |                             United States Magistrate Judge
26 | G:\BZALL\-BZCASES\HARRIS\FINDINGS.OF.FACT.wpd
27 |
28 |

4