UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HENRY L. HARRIS, | ) | |
| | ) | |
| Plaintiff(s), | ) | No. C 05-1286 BZ |
| | ) | |
| v. | ) | **ORDER GRANTING DEFENDANT'S** |
| | ) | **MOTION FOR SUMMARY JUDGMENT** |
| JOHN E. POTTER, U.S. Postmaster General, | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

Before me is defendant's second and re-noticed motion for summary judgment against pro se plaintiff Henry Harris.[1]  By Order dated February 6, 2006, I granted summary adjudication in favor of defendant on all issues except plaintiff's claims that he suffered retaliation for having filed prior complaints

---

[1] After the untimely death of Mr. Harris, Victoria Monroe was substituted in as plaintiff as his successor in interest. See Civil Docket No. 116 (Stipulation and Order, December 13, 2006).  At all material times, Monroe has also acted pro se.  I use the term "plaintiff" to refer both to Mr. Harris and to the papers and arguments presented by Ms. Monroe on his behalf.  Because the allegations of the complaint relate solely to Mr. Harris, I use the masculine prepositional form. All parties have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) for all proceedings, including entry of final judgment.

1

of age discrimination.  See Civil Docket No. 65.  On March 7, 2006, defendant filed his second summary judgment motion. Civil Docket No. 67.  After considering both parties' papers, I scheduled an evidentiary hearing to determine certain specific questions of fact.  Civil Docket No. 97 (Order Denying Summary Judgment, May 11, 2006).  Following Mr. Harris' untimely death, the evidentiary hearing was held on March 26, 2007.  I issued findings of fact and allowed defendant to re-notice his motion for summary judgment.  See Civil Docket No.'s 130, 131.  Full briefing followed.

At all material times, Plaintiff worked for the defendant in the Bay Valley District as a Driver Instructor Examiner (DIE).  Assigned to the Training and Development Unit (Training) of the Human Resources Department, his principal duty was to train people hired to drive postal service vehicles.  See Findings of Fact (FF), ¶ 1.  Plaintiff complains that he suffered retaliation by being denied overtime work.  Specifically, he alleges that on February 21, 2003, he observed Dennis Ward, a Tractor Trailer Operator ("TTO") in the Transportation and Networks ("Transportation") department, performing DIE work.  He further asserts that, in the same period of time, the Training Unit's failure to keep its own overtime desired list and defendant's refusal to allow plaintiff to sign his name onto Transportation's overtime desired list denied him overtime.

Defendant moves for summary judgment on the grounds that plaintiff did not suffer an adverse employment action and, even if he did, defendant had legitimate business reasons for

not allowing plaintiff to work overtime. For the reasons set out below, I **GRANT** defendant's motion for summary judgment.[2]

It is unlawful for an employer to discriminate against an employee in retaliation for opposing any practice made unlawful by the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. 29 U.S.C. § 623(d). The elements of a prima facie case of retaliation are that the employee engaged in statutorily protected activity; that he was discharged or suffered some other adverse employment decision; and that there is a causal connection between the two. O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 763 (9th Cir. 1996).

Once an employee has established a prima facie case of retaliation, the burden shifts to the employer "to articulate a legitimate nondiscriminatory reason for its employment decision. Then in order to prevail, the [employee] must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is

---

[2] Summary judgment is appropriate when there is no genuine issue as to any material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. There is no genuine issue of material fact where "the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). The non-movant must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). When determining whether there is a genuine issue for trial, "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the [non-movant]." Matsushita, 475 U.S. at 587; Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A mere scintilla of evidence will not be sufficient to defeat a motion for summary judgment. Anderson, 477 U.S. at 248.

discriminatory" or, in this case, retaliatory.  <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 889 (9th Cir. 1994).  The requisite proof to establish a prima facie case is minimal, and plaintiff "need only offer evidence which gives rise to an inference of unlawful discrimination."  <u>Id.</u> (internal quotation marks omitted).

I agree with defendant that plaintiff has failed to demonstrate an adverse employment decision cognizable under section 623(d).[3]  First, although the defendant's Budget and Finance Department records indicate that approximately 101 overtime hours were allotted to the Human Resources Department for fiscal year 2003, and 272 hours for 2004,[4] Manager of Human Resources Virginia Glover was not aware of these allocations.  FF at ¶¶ 4, 2.  Consequently, no employee in the Training Unit was paid overtime in 2003 or 2004 .  <u>Id.</u> at ¶¶

---

[3] I assume, for the purpose of this Order, that plaintiff met the other two elements of his prima facie case.

[4] Plaintiff argues that defendant violated the duty to disclose discoverable documents by refusing to supply him with employee training lists, overtime desired lists, and budget documents thereby limiting plaintiff's ability to make an evidentiary showing.  <u>See</u> Pl.'s Opp. at 3, 5, 14; <u>see also</u> Pl.'s Trial Exh. V.  Plaintiff, however, produced no admissible evidence to support his assertion that the documents were not produced.  In fact, the pertinent training lists are only kept for one year and were therefore unavailable.  <u>See</u> Evid. Hr'g. Tr. at 46:19-47:9; Def.'s Reply at Lee Decl. ¶ 3.  Overtime desired lists for the pertinent period were provided to plaintiff in discovery.  <u>See</u> Def.'s Reply at Lee Decl. ¶ 3.  Budget documents showing overtime allocations were provided to plaintiff in anticipation of trial, <u>see</u> Def.'s Trial Exh. 15, and were introduced again at the evidentiary hearing, where plaintiff cross-examined an employee knowledgeable about them.  In any case, plaintiff cites no authority to support the conclusion that alleged discovery violations will defeat summary judgment.  Plaintiff could have sought to compel production of documents when discovery was open.

4

5, 3, 2.  Plaintiff submitted no evidence to demonstrate otherwise.  Thus, the fact that defendant did not keep an overtime list for the Training Unit, <u>id.</u> at ¶ 13, and that plaintiff had no opportunity to work overtime in his department in 2003 and 2004 does not demonstrate an adverse employment action.[5]  No one in his department was granted or had an opportunity to work overtime, and he was treated no differently.  <u>See, e.g.</u>, <u>Jimenez v. Potter</u>, 2005 WL 2296830, at *7 (W.D. Tex. 2005) (where employee could not have worked overtime, action by employer precluding employee's eligibility for that overtime did not constitute an adverse employment action).

As for observing Mr. Ward perform DIE work in February 2003, it is undisputed that when TTOs such as Mr. Ward were assigned DIE work on an ad hoc basis in 2003 and 2004, they were paid straight time out of the Transportation budget.  They were not paid overtime.  When on February 21, 2003, Mr. Ward was utilized as an ad hoc DIE, he was not paid overtime.  <u>See</u> <u>id.</u> at ¶¶ 10, 11.  Insofar as plaintiff was not eligible for overtime in his department, Mr. Ward's DIE work deprived

---

[5] Plaintiff argues repeatedly in opposition that the Training Unit's failure to keep its own overtime desired list constituted a breach of the collective bargaining agreement and the local memorandum of understanding.  <u>See</u> Pl.'s Opp. at 3; Pl.'s Trial Exh. E; Def.'s Exh. 9.  The question before me, however, is whether plaintiff's not receiving opportunity for overtime work constituted an adverse employment decision.  At any rate, plaintiff presented no evidence to suggest that defendant's handling of Training Unit overtime in any way reflected a change to past practice, or was implemented subsequent to plaintiff's complaints.  For this reason, and for those already explained, plaintiff's lack of overtime opportunity in the Training Unit did not constitute an adverse employment decision.

neither plaintiff nor any other Training employee of overtime. Because no Training employees could receive overtime during the relevant period, plaintiff's not receiving overtime could not constitute an adverse employment decision.[6]

Nor did the defendant's refusal to allow plaintiff to sign onto Transportation's overtime desired list in 2003 and 2004 constitute an adverse employment decision. It is undisputed that employees such as plaintiff, who were not a part of the Transportation department, historically were not allowed to sign onto Transportation's overtime desired list.[7] See id. at ¶ 15. It is also undisputed that, as a DIE, plaintiff would have been eligible for Transportation overtime only if the overtime desired lists were exhausted and, even then, only after the employees working in other tours within Transportation declined the assignment. Id. at ¶ 16. Because Transportation's overtime desired list was never exhausted in 2003 or 2004 in the manner described, plaintiff was never

---

[6] Plaintiff correctly asserts that Ms. Glover recently approved some overtime for Training Unit employees. See Evid. Hr'g. Tr. at 13:8-13. That Training employees were assigned some overtime once within the past year, however, does not have any bearing on whether plaintiff or his co-workers were eligible for overtime in the pertinent period, or whether plaintiff's experiences constituted an adverse decision. At any rate, the allocation occurred as a result of the "hiring [of] more carriers than we have ever hired before." Evid. Hr'g. Tr. at 13:15. As for the argument that the use of the TTOs to perform DIE work violated the collective bargaining agreement, see Pl.'s Opp. at 6, the argument is without merit for much the same reasons articulated in note five above.

[7] Plaintiff argues that the historic practice of not allowing Training employees to sign up for Transportation overtime is a violation of the agreement. See Pl.'s Opp. at 4. For the reasons articulated in notes five and six, the argument is without merit.

6

1  denied overtime for which he was eligible.[8]  Thus, he
2  experienced no adverse employment decision.
3      Evan assuming that plaintiff has made out a prima facie
4  case of retaliatory discrimination, defendant has demonstrated
5  legitimate, non-retaliatory and non-pretextual justifications
6  for his actions.  There was no evidence proffered to rebut the
7  explanations of Ms. Glover and Training Unit manager Janice
8  Newsome that they never approved overtime in 2003 and 2004
9  because they understood there to be no allotted overtime
10 budget for their departments.  The absence of a Training Unit
11 overtimed desired list, therefore, is understandable.[9]
12     As for the use of TTOs to perform DIE work, it is
13 undisputed that TTOs such as Mr. Ward were paid straight time
14 out of Transportation's budget to perform their DIE work.
15 Thus, the use of TTOs was more economical than paying overtime
16 wages for the same work.  See id. at ¶¶ 10-12.  Moreover, the

---

[8] As evidence that Transportation overtime list was in fact exhausted during the relevant period, plaintiff points to a number of declarations in which plaintiff and other employees state that the "Overtime Desired List" was exhausted at various times in 2003 and 2004. See Pl.'s Trial Exhs. M, P. Assuming the employees refer to Transportation's overtime desired list, the declarations say nothing of whether Transportation employees in other tours declined overtime assignments once the list was exhausted.

[9] Plaintiff presses the argument that because the local memorandum of understanding required establishment of an overtime desired list for the Training Unit, defendant's failure to do so evidences the pretextual character of its defense.  Assuming plaintiff's take on the agreement is correct, as already noted there is no evidence that the Training Unit's failure to keep its own overtime list represented any change of practice following plaintiff's complaints of discrimination.  It is undisputed that the practice impacted all Training Unit employees equally.  No evidence rebuts defendant's managers' explanations.  On these facts, it is impossible to accept plaintiff's claim of pretext.

practice resulted from the need to maintain strict adherence to the required training regime. Id. at ¶¶ 7-9, 12. Because the practice was demonstrably more economical, and because it was required to timely train defendant's employees, defendant met its burden to demonstrate a legitimate, non-retaliatory reason for using TTOs to perform DIE work.[10]

Finally, as for the refusal to allow plaintiff to sign onto Transportation's overtime desired list, the evidence demonstrates that defendant was attempting to abide by historical practice and the applicable memorandum of understanding. As already explained, employees outside Transportation were historically barred from signing onto the department's overtime desired list. See FF at ¶ 15. The applicable memorandum of understanding, Def.'s Trail Exh. 9, demonstrates that overtime lists would be established by section and tour, and that employees on other tours within the same section would have priority for overtime over employees outside the section. See id. at Art. 8, § 2(A); Art. 39, § 1(C). This corroborates the explanations given at the hearing

---

[10] Plaintiff argues that defendant's admission that DIEs recently performed overtime work belies the explanation that the use of TTOs for the work was more economical and efficient, thus evidencing pretext. See, e.g., Pl.'s Opp. at 4; Evid. Hr'g. Tr. at 13:8-13. First, that DIEs have within the past year worked overtime does not mean that it was not, and is not, more economical to have as much of the work done at the regular wage rate as possible. Second, as Ms. Glover explained at the hearing, the recent approval of overtime was in response to the "hiring [of] more carriers than we have ever hired before." Evid. Hr'g. Tr. at 13:15. Due to the number of new hires and the time within which they had to be trained, it was more efficient to utilize some overtime within the Unit. See id. at 13:16-18. This explanation stands undisputed, and in fact serves to corroborate defendant's positions regarding the allotment of overtime within the Training Unit.

1 and comports with and my own findings of fact.  See FF at ¶
2 16.  Defendant's refusal to allow plaintiff to sign onto
3 Transportation's overtime list is therefore supported by
4 legitimate, non-retaliatory reasons.[11]

5 Because he cannot demonstrate that he suffered an
6 adverse employment decision, plaintiff has not satisfied his
7 burden to show a prima facie case of retaliation.  Even if he
8 could, defendant offers legitimate, non-retaliatory reasons
9 for adhering to practices and policies that denied plaintiff
10 the opportunity to work overtime.  For all the reasons
11 discussed, no material issues of fact exist to preclude me
12 from granting summary judgment.[12]  Therefore, **IT IS HEREBY**

---

[11]  Plaintiff argues that defendant's shifting explanations for his treatment of plaintiff go to pretext. Plaintiff is correct that, earlier in this litigation, defendant took the position that the Training Unit had no overtime budget at all.  Later, defendant clarified that Training had a small overtime budget allotment.  At the evidentiary hearing, it was shown that neither Ms. Glover nor Ms. Newsome knew of the budget allotment, and it is undisputed that they acted consistently with that understanding.  In light of all of the evidence discussed, there is no issue of fact as to the legitimacy of defendant's justifications.

[12]  In his opposition, plaintiff refers to defendant's allegedly retaliatory refusal to promote him and to remove a letter fo warning from his file.  See Pl.'s Opp. at 2, 5, 9, 19-20.  Plaintiff's claims regarding various refusals to promote, however, were dismissed by my Order dated February 6, 2006. In the same Order, I concluded that the only claims remaining were plaintiff's post-2002 retaliation claims, in which neither a failure to promote nor a failure to remove a letter of warning were alleged.  See Civil Docket No. 70 (Decl. of Jonathan U. Lee in Support of Mot. and Mot. for Sum. J, Exh. A (Postal Service EEO Compl., August 8, 2003)); Pl.'s Trial Exh. I:283, 299.  Thus, plaintiff's complaints about promotions and the letter of warning are not properly before me.  Insofar as plaintiff attempts to raise denials for overtime or any other claim that arose between 1997 and 2000, see Pl.'s Opp. at 15-18, those claims are barred both by the passage of time and by my previous orders on summary judgment in this case and in Harris v. Potter, 2002 WL 31298852 (2002).

**ORDERED** that defendant's motion for summary judgment is **GRANTED**.

Dated: May 9, 2007

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\HARRIS\SUMM JUDG 2\ORD.GRANT.SUM.J.NEW.wpd